UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | NO. 5:18-CR-463 |
| V. | § § | |
| JUAN BRAVO-DE LA CRUZ MORANTE | § | |
| TN:JUAN DE LA CRUZ | § | |
| BRAVOMORANTE | § | |

## <u>ORDER</u>

Defendant Juan De la Cruz Bravo-Morante was indicted on charges of illegal reentry into the United States in violation of 8 U.S.C. § 1326. On August 3, 2018, Defendant pleaded guilty to the charge. Defendant now requests this court to grant his Motion to Withdraw the Guilty Plea, Motion for Leave, and Motion to Dismiss the Indictment. (Dkt. No. 29). Defendant argues that the immigration court that issued the underlying order of deportation serving as the predicate for the illegal reentry charge lacked subject-matter jurisdiction over the removal proceeding. Defendant largely bases his argument on the Supreme Court decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). This court concludes that *Pereira* does not support Defendant's motions. Accordingly, for reasons stated in this Order, Defendant's motions (Dkt. No. 29) are **DENIED**.

## I. BACKGROUND

Defendant, a citizen of Mexico, entered the United States without obtaining legal status. While illegally in the United States, Defendant engaged in criminal

conduct that led to his arrest and custody with the United States Immigration and Customs Enforcement ("ICE") on charges of unauthorized entry into the United States. On January 4, 2011, Defendant was served with a notice to appear in immigration court for a removal proceeding before an immigration judge. It is undisputed that the notice to appear did not include a time, date, or place for the removal proceeding. (Dkt. No. 31-2). Defendant signed the notice to appear and requested an expedited hearing. (Dkt. No. 31-2). Moreover, in a notice of rights and request for disposition Defendant admitted that he was in the United States illegally, conceded that he does not believe he faces any harm upon return to his country, and waived his right to a hearing before the immigration court. (Dkt. No. 31-3). On January 24, 2011, Defendant attended a deportation hearing before an immigration judge and was ordered deported. He waived any appeal (Dkt. No. 31-4) and was deported to Mexico the following day.

On March 20, 2013, Defendant illegally re-entered the United States. Five years later, on June 1, 2018, immigration authorities found and detained Defendant near Laredo, Texas. On June 19, 2018, Defendant was indicted for illegal reentry into the United States, a felony, in violation of 8 U.S.C. § 1326. On August 3, 2018, Defendant appeared before U.S. Magistrate Judge Diana Song Quiroga and pleaded guilty to the offense. Magistrate Judge Song Quiroga accepted the plea of guilty upon finding that Defendant's plea was made knowingly and voluntarily. Following the plea colloquy, the court ordered probation to prepare a presentence investigation report, and the period of time for review and objections to the presentence

investigation report passed. Defendant was scheduled to appear before the court for sentencing on September 25, 2018. But the day before his sentencing hearing, Defendant requested a continuance to evaluate the possibility of obtaining relief under *Pereira*. The Court granted the request and ordered deadlines for filing motions and responses. On November 1, 2018, Defendant moved to withdraw his guilty plea and for dismissal of his indictment. The government responded.

## II. DISCUSSION

Defendant pleaded guilty to an indictment charging him with illegal reentry, in violation of 8 U.S.C. § 1326. An element of that offense is a prior "arrest and deportation." *United States v. Flores-Peraza*, 58 F.3d 164, 166 (5th Cir. 1995) (citing *United States v. Cardenas-Alvarez*, 987 F.2d 1129, 1131–32 (5th Cir. 1993)); *see also* Fifth Circuit Pattern Jury Instructions (Criminal) § 2.03 (2015) (stating the government must prove "the defendant had previously been deported [denied admission][excluded][removed] from the United States" (brackets in original)).[1] Here, the element of prior deportation is met by the 2011 deportation order and Defendant's actual deportation pursuant to that order. (Dkt. No. 29-2).

Defendant argues that the 2011 deportation order is void because the immigration court that issued it lacked "subject-matter jurisdiction." Defendant relies on the Supreme Court's decision in *Pereira*, which held that a putative notice

---

[1] In relevant part, 8 U.S.C. § 1326(a) applies to any alien who was deported or removed "while an order of exclusion, deportation, or removal is outstanding, and thereafter . . . enters, attempts to enter, or is at any time found in, the United States."

to appear is not a "notice to appear" under 8 U.S.C. § 1229(a)(1) if it does not include the time and place of the removal proceeding (hearing). According to Defendant, because the 2011 notice to appear did not include time-and-place information, it is not a "notice to appear" as contemplated by 8 U.S.C. § 1229(a)(1). As a result, Defendant contends that the immigration court was not vested with subject-matter jurisdiction, the 2011 deportation order had no legal effect, and the prior deportation element under § 1326 is not met. And despite having pleaded guilty to the instant offense, Defendant asserts that he should be allowed to withdraw his guilty plea under 8 U.S.C. § 1326(d) and the *Carr* factors. *See United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984).

As set out below, the court concludes that the *Pereira* decision does not address the precise issue in this case and is thus not dispositive given its limited relevance to this case. The court finds that the immigration court did not lack jurisdiction to conduct Defendant's deportation hearing or to issue the resulting deportation order. Moreover, the court is not persuaded that Defendant should be allowed to withdraw his plea of guilty to the illegal entry charge under § 1326(d) or the *Carr* factors.

## A. *Pereira*

The Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") provides that nonpermanent residents subject to removal (deportation) proceedings may be eligible for cancellation of those proceedings. 8 U.S.C. § 1229b. To be eligible for cancellation, the nonpermanent resident must have "been physically present in the United States for a continuous period of not less than 10 years immediately

preceding the date of [an] application" for cancellation of removal. *Pereira*, 138 S. Ct. at 2110 (quoting 8 U.S.C. § 1229b(b)(1)(A)). This 10-year period of continuous physical presence is not without limitation. The IIRIRA provides that the alien's continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear. *Id.* (quoting 8 U.S.C. § 1229b(d)(1)(A)). This limitation is commonly known as the "stop-time rule." *Id.* at 2109.

The statute provides that a notice to appear should include information about the time, place, and date for the removal proceeding. 8 U.S.C. § 1229(a)(1). The Department of Homeland Security ("DHS") is initially responsible for supplying the notice to appear and time-and-place information. In recent years, however, DHS increasingly served noncitizens with notices to appear that did not include the time-and-place information. *Pereira*, 138 S. Ct. at 2111; *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314 (6th Cir. 2018) ("[A]lmost 100 percent of [notices to appear] issued during the three years preceding *Pereira* did not include the time and date of the proceeding." (internal quotations omitted)). This practice was institutionalized by a 1997 DHS regulation that provided that the time-and-place information need only be included in a notice to appear when practical. *Pereira*, 138 S. Ct. at 2111 (citing 62 Fed. Reg. 10332 (1997)); *In re Bermudez-Cota*, 27 I. & N. Dec. 441, 443–44 (BIA 2018); 8 C.F.R. § 3.18 (1998). Under the practice, notices to appear that lacked time-and-place information were deemed to trigger the stop-time rule.

Pereira, a citizen of Brazil, entered the United States in 2000 as a temporary non-immigrant visitor. *Pereira*, 138 S. Ct. at 2112. After his non-immigrant visa

expired, he remained in the United States in an unlawful status.  Six years later, in 2006, Pereira was arrested for driving a vehicle under the influence of alcohol.  While in detention, DHS served him with a document entitled "Notice to Appear."  *Id.*  The notice charged him with overstaying his visa and directed him to appear before an immigration judge in Boston at a date and time that was "to be set."  *Id.*  In 2007, the immigration court mailed Pereira a notice to appear that included the time and place of his initial removal hearing.  The notice to appear, however, was returned as undeliverable because it was sent to the wrong address.  *Id.*  Pereira never received the notice, failed to appear at the hearing, and was ordered removed in absentia.  *Id.*

In 2013, Pereira was arrested for a traffic violation and detained by ICE.  By this time, Pereira had been continuously physically present in the United States for a period of over 10 years.  Once the immigration court reopened his removal proceeding, Pereira argued that he was entitled to relief in the form of cancellation of the removal proceeding under 8 U.S.C. § 1229b(b)(1).[2]  The government opposed and asserted the stop-time rule, arguing that Pereira's "continued presence" was "deemed to end" in 2006 when he was served with a notice to appear.  *See* 8 U.S.C.

---

[2] Section 1229b(b)(1)(A) provides:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application . . . .

§ 1229b(d)(1).[3]  Pereira countered that the stop-time rule did not apply in his case because the 2006 notice to appear did not include the time-and-place information, as required by 8 U.S.C. § 1229(a).[4]  The immigration court disagreed, finding that the notice to appear did not require the time-and-place information to trigger the stop-time rule.  Pereira unsuccessfully appealed the immigration court's decision to the Board of Immigration Appeals, and then to the Court of Appeals for the First Circuit. *Pereira*, 138 S. Ct. at 2113–14.  He then appealed to the Supreme Court, and the Supreme Court granted certiorari.[5]

On June 2018, the Supreme Court issued its opinion.  The question before the Court was: "If the Government serves a noncitizen with a document that is labeled 'notice to appear,' but the document fails to specify either the time or place of the removal proceedings, does it trigger the stop-time rule?"  *Id.* at 2110.  The Court held that "[a] putative notice to appear that fails to designate the specific time or place of

---

[3] Section 1229b(d)(1) provides:
> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) except in the case of an alien who applies for cancellation of removal under subsection (b)(2), when the alien is served a notice to appear under section 1229(a) of this title, or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

[4] Section 1229(a)(1), in relevant part, provides:
> In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following:
> . . . .
> (G)(i) The time and place at which the proceedings will be held.

[5] *Pereira v. Sessions*, 138 S. Ct. 735 (2018).

the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113–14.

Here, Defendant contends that the *Pereira* decision is dispositive in this case because, as in *Pereira*, his 2011 notice to appear did not include the time-and-place information. Defendant argues that because *Pereira* held that a putative notice lacking the time-and-place information is not a "notice to appear" under § 1229(a), this court must similarly conclude that a notice to appear lacking the time-and-place information is not a "charging document" for purposes of vesting the immigration court with "subject-matter jurisdiction." *See* 8 C.F.R. § 1003.13. Defendant posits that, absent a valid "charging document," the immigration court did not have subject-matter jurisdiction over his removal proceeding, and the 2011 order of deportation is thus a nullity. The crux of Defendant's argument is that this court should read *Pereira* expansively to hold that a notice to appear that is defective for purposes of triggering the stop-time rule is defective for all purposes. Not so.

Defendant misapprehends the breadth of the *Pereira* decision. The Supreme Court took concrete and measured steps to ensure that its opinion would not be broadly interpreted or perceived as having general application. This court is bound by those admonitions. For example, the Court repeatedly expressed that it was addressing a "narrow question." *Pereira*, 138 S. Ct. at 2110, 2113. The Court was careful not to examine the relationship between stop-time rule requirements to other statutory and regulatory requirements that address the purpose of the notice to appear in removal proceedings. In responding to arguments on whether time-and-

place information for stop-time rule purposes is more crucial than other types of information required to be included in a notice to appear,[6] the Court stated that the "dispositive question in this case is much narrower, but no less vital: Does a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger the stop-time rule?" *Id.* at 2113.

The *Pereira* decision is tied to the stop-time rule like a ship made fast to its mooring.[7] There is little space to argue its application to matters other than the stop-time rule. This creates too high a hurdle for the Defendant to clear with his argument that *Pereira* supports a finding that the immigration court in this case lacked subject-matter jurisdiction over Defendant's 2011 removal proceeding.

Specifically, the Supreme Court did not address the jurisdiction of the immigration court in *Pereira*. *United States v. Perez-Arellano*, No. 18-4301, 2018 WL 6617703, at *3 (4th Cir. Dec. 17, 2018) ("Simply put, *Pereira* did not address the question of an immigration judge's jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of [a prior] removal proceeding."). This point is important because the authority of an administrative

---

[6] In addition to time-and-place information, § 1229(a)(1)(A)–(G) requires the following types of information: nature of the proceedings, legal authority for proceedings, conduct alleged to have violated the law, charges, list of available counsel, alien's duty to update contact information with the Attorney General, consequences for failure to update contact information, and consequences for failure to appear.

[7] In *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018), the Fifth Circuit emphasized the narrow holding in *Pereira* and cited favorably to cases where the courts have declined to apply *Pereira* beyond the context of the stop-time rule.

agency to act is a threshold question.[8]  The question of whether a notice to appear triggers the stop-time rule becomes irrelevant if the immigration court lacked jurisdiction.  Whether the immigration court had jurisdiction to act in the first instance was raised by the government in *Pereira* when it argued that the notice to appear bore the character of a "charging document."  *See Pereira*, 138 S. Ct. at 2116 n.7.  The Supreme Court had the option to address the jurisdictional nature of the charging document but did not do so.  If Defendant's argument is correct, the Supreme Court should have vacated the immigration court's decision on the basis that it acted outside its statutory authority by issuing the underlying deportation Order.  Instead, the Supreme Court remanded to the immigration court, thereby implicitly recognizing that the immigration courts had continued jurisdiction over the proceeding.  This court concludes that the *Pereira* decision offers little succor to the Defendant.

## B. Jurisdiction of the Immigration Court

Looking beyond *Pereira*, Defendant also misunderstands the source of the immigration court's jurisdiction.  Defendant argues that subject-matter jurisdiction does not vest in the immigration court if the notice to appear lacks time-and-place information.  (Dkt. No. 29 at 7–8)  Defendant's argument implies that the jurisdiction of an immigration court over removal proceedings may be vested or withdrawn by the actions of the parties.  This point mischaracterizes the substantive nature of subject-

---

[8] *See Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 310 n.1 (1973) ("[J]urisdiction of the relevant agency is a threshold issue . . . .") (Marshall, J., dissenting).

matter jurisdiction.

Generally, subject-matter jurisdiction is "the courts' statutory or constitutional *power* to adjudicate the case." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 643 (2002) (quoting *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 89 (1998)). This power is "limited and must be conferred by Congress within the bounds of the Constitution." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011). It cannot be waived or forfeited. *Id.* Because of that, "no action of the parties can confer subject-matter jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

Through passage of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et. seq., Congress established the immigration courts and extended to them authority over removal and deportation proceedings. This means that the provenance of the authority of the immigration courts, as well as well as their subject-matter jurisdiction, is statutory. In addition, Congress delegated to the U.S. Attorney General authority necessary to fill the gaps in the statute by promulgating regulations on the procedures for the immigration courts to conduct removal proceedings. 8 U.S.C. § 1103(g). Pursuant to that authority, the Attorney General promulgated regulations that establish the procedure(s) by which immigration courts are authorized to exercise their subject-matter jurisdiction. As a result, the immigration courts are governed by statutory and regulatory frameworks.

### *1. Statutory Framework*

In the context of removal or deportation proceedings, two statutory provisions are relevant: 8 U.S.C. §§ 1229a and 1229. Section 1229a, entitled "Removal proceedings," conveys power, or authority, to immigration judges to preside over removal proceedings. It specifically provides that "immigration judge[s] shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). Deportation proceedings are "the sole and exclusive procedure" for determining whether an alien may be admitted or removed from the United States. *Id.* § 1229a(a)(3).

To fully exercise that authority, immigration judges are entrusted by statute with a broad range of conduct for removal hearings, such as administering oaths, taking testimony and evidence, ruling on motions or objections, and making credibility determinations based on the totality of the circumstances and all relevant factors. *Id.* §§ 1229a(b)–(c). The statute directs immigration judges to "decide whether an alien is removable." *Id.* § 1229a(c)(1)(A). If the immigration judge determines removal is appropriate, the judge orders the alien removed, and informs the alien of the right to appeal and other consequences. *Id.* § 1229a(c)(5).

Section 1229 is entitled "Initiation of Removal Proceedings." Despite its title, § 1229 is silent about how removal proceedings are to be initiated. Instead, it focuses on information that must be provided to persons facing removal proceedings. Section 1229(a)(1) provides that an individual facing removal proceedings must be served with a written notice to appear. In general, the notice must include the following: (A)

nature of the proceedings; (B) legal authority for the proceedings; (C) the alleged unlawful acts or conduct; (D) the charges and statutory provisions allegedly violated; (E) the alien's right to representation; (F) an explanation of the requirement that the alien provide an address and telephone number and any changes to same, along with the consequences of failing to appear at the hearing; and (G) the *time and place of the proceedings*. 8 U.S.C. § 1229(a)(1)(A)–(G).[9]

### *2. Regulatory Framework*

Congress conferred on the Attorney General broad authority over immigration and naturalization matters, including authority to establish regulations necessary to carry out various responsibilities under the INA. *See* 8 U.S.C. § 1103(g). Under this authority, the Attorney General has promulgated a comprehensive regulatory framework governing immigration court proceedings and, in particular, deportation proceedings. *See* 8 C.F.R. Ch. V, Subch. A, Pt. 1003, Subpt. C ("Immigration Court—Rules of Procedure"). Four specific regulations are relevant to this case.

Regulation 8 C.F.R. § 1003.13 provides relevant definitions. A "charging document" is defined as "the written instrument which initiates a proceeding before an Immigration Judge." 8 C.F.R. § 1003.13. For proceedings initiated before April 1,

---

[9] The § 1229 notice to appear is the subject of the *Pereira* decision. As noted above, the Supreme Court held that a notice to appear that lacks time-and-place information fails to satisfy the requirements of § 1229 for purposes of the stop-time rule. The *Pereira* decision, however, does not address § 1229 in the context of the jurisdiction of the immigration court. Indeed, as explained above, by remanding for further proceedings, the Supreme Court implicitly acknowledged that a notice to appear that lacks time-and-place information does not affect the jurisdiction of the immigration court. Stated differently, the Supreme Court's *Pereira* decision has no adverse effect on the statutory framework that governs the jurisdiction of the immigration court over removal proceedings.

1997, charging documents include: "an Order to Show Cause, a Notice to Applicant for Admission Detained for Hearing before Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." *Id.* For proceedings initiated after April 1, 1997, charging documents include: "a *Notice to Appear*, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." *Id.* (emphasis added).

Regulation 8 C.F.R. § 1003.14, entitled "Jurisdiction and commencement of proceedings," provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a).[10] The charging document must include a certificate showing service on the alien and indicate the immigration court where the charging document is filed. *Id.* This regulation establishes how removal proceedings are administratively commenced.

Regulation 8 C.F.R. § 1003.15 sets out the content for both orders to show cause and notices to appear. Subsection (b) provides that both an order to show cause and a notice to appear must include the following information:

(1) The nature of the proceedings against the alien;

---

[10] 8 C.F.R. § 1003.14(a) provides:

> Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service. The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 which indicates the Immigration Court in which the charging document is filed. However, no charging document is required to be filed with the Immigration Court to commence bond proceedings pursuant to §§ 1003.19, 1236.1(d) and 1240.2(b) of this chapter.

(2) The legal authority under which the proceedings are conducted;

(3) The acts or conduct alleged to be in violation of law;

(4) The charges against the alien and the statutory provisions alleged to have been violated;

(5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authorized to appear pursuant to 8 C.F.R. 1292.1;

(6) The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear; and

(7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 1003.26.

8 C.F.R. § 1003.15(b). Unlike the statute, there is no requirement in the regulation that the notice to appear state time-and-place information in order for it to function as a charging document. In addition, § 1003.15(c) lists "administrative information" that must be provided to the immigration court in a notice to appear:

(1) the alien's names and any known aliases;

(2) the alien's address;

(3) the alien's registration number, with any lead alien registration number with which the alien is associated;

(4) the alien's alleged nationality and citizenship; and

(5) the language that the alien understands.

*Id.* Here, too, § 1003.15(c) does not require that the time-and-place information be included in a notice to appear.

Regulation 8 C.F.R. § 1003.18, entitled "Scheduling of Cases," establishes the procedures by which matters, including deportation proceedings, are scheduled before the immigration court. In the case of a deportation proceeding under § 1229a, DHS is responsible for commencing the proceeding by filing an initial notice to appear that, "where practical," must list time-and-place information. 8 C.F.R. § 1003.18(b). If the time-and-place information is not included in the notice to appear, the burden of responsibility shifts to the immigration court to schedule the initial removal proceeding and to provide the government and alien notice with time-and-place information. *Id.* The immigration court, thereafter, has the burden of providing time-and-place information for hearings to the government and the alien, such as rescheduling matters. 8 C.F.R. § 1003.18.[11]

### 3. Jurisdictional Analysis

The government correctly argues that subject-matter jurisdiction of the

---

[11] 8 C.F.R. § 1003.18 provides:

> (a) The Immigration Court shall be responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings.

> (b) In removal proceedings pursuant to section 240 of the Act, the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable. If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing. In the case of any change or postponement in the time and place of such proceeding, the Immigration Court shall provide written notice to the alien specifying the new time and place of the proceeding and the consequences under section 240(b)(5) of the Act of failing, except under exceptional circumstances as defined in section 240(e)(1) of the Act, to attend such proceeding. No such notice shall be required for an alien not in detention if the alien has failed to provide the address required in section 239(a)(1)(F) of the Act.

immigration court derives from a Congressional grant of power, not a regulatory gesture. The government also accurately points out that by enacting § 1229a, Congress, in clear and plain terms, conveyed to immigration judges authority over deportation proceedings. Section 1229a provides that "immigration judge[s] *shall* conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1) (emphasis added). In addition, the Congressional grant of authority is over a specific class of cases. The words "immigration judge[s] shall conduct" conveys an imperative that both demands and limits who can conduct removal proceedings. *See United States v. Kalb*, 891 F.3d 455, 462 (3d Cir. 2018) (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153–54 (2013)). The specific reference to a narrow class of cases—inadmissibility or deportability—delineates the range of subject-matter jurisdiction for the immigration courts created under § 1229a. *See Gulf Restoration Network v. Salazar*, 683 F.3d 158, 172 (5th Cir. 2012) (noting jurisdictional prescriptions delineating a class of cases implicates subject-matter jurisdiction).

That the word "jurisdiction" is not found in § 1229a is irrelevant. The Supreme Court has held that jurisdictional statutes do not require the use of the word "jurisdiction." *Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018).[12] Congress need not "incant magic words in order to speak clearly" about jurisdiction. *Sebelius*, 568 U.S.

---

[12] *See also United States v. Kalb*, 891 F.3d 455, 462 (3d Cir. 2018) (holding that failure to use the word "jurisdiction" did not affect the jurisdictional nature of an appeal-period provision that used mandatory rather than permissive terms).

at 153–54. But context does matter. *Id.* Here, jurisdictional context is provided in § 1229a(a)(3) and other related subsections.

Section 1229a(a)(3) provides that "[u]nless otherwise specified in this chapter, a [removal] proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been admitted, removed from the United States." 8 U.S.C. § 1229a(a)(3). Section 1229a(b)(1), in turn, speaks of the immigration judge's "authority" to administer oaths, receive evidence, or interrogate the alien and witnesses, among other aspects essential to the fact-finding powers embedded within the exercise of jurisdiction. *Id.* § 1229a(b)(1). And § 1229a(c)(1)(A) provides that "the immigration judge shall decide whether an alien is removable from the United States." *Id.* § 1229a(c)(1)(A). Taken together, these statutory provisions demonstrate the jurisdictional nature of the statute by emphasizing an immigration judge's *power* over removal proceedings.

Read in its entirety, § 1229a shows that the statute "explicitly *vests*" immigration judges with "*the power* to conduct removal proceedings." *Sosa-Valenzuela v. Gonzales*, 483 F.3d 1140, 1145 (10th Cir. 2007) (emphasis added); *see also Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006) (referring to § 1229a(a)(1) as a congressional grant of power to the immigration judges); *Schubler v. Holder*, 472 F. App'x 867, 870–71 (10th Cir. 2012) (noting that that an immigration judge's authority in removal proceedings is defined by § 1229a(a)(1) and holding that the immigration judge's ruling about an alien's inadmissibility "was squarely within its *jurisdiction under § 1229a(a)(1)*" (emphasis added)). The Fifth Circuit thus

recognizes that "[w]ith the exception of a provision allowing the Attorney General to order certain aliens removed, the statutory framework of the INA conveys that only an [immigration judge] may enter an order of removal." *James v. Gonzales*, 464 F.3d 505, 514 (5th Cir. 2006) (citing 8 U.S.C. § 1229a(1)–(3)).

Unlike the government, Defendant claims DHS regulatory framework as the source of jurisdiction of the immigration courts. Defendant points to 8 C.F.R. § 1003.14(a), which provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."[13] Defendant notes that the regulations define "charging document" as "the written instrument that initiates proceedings before an immigration judge," and that a notice to appear is a charging document. *See* 8 C.F.R. § 1003.13. Defendant further cites to 8 C.F.R. § 1239.1(a), which provides that every removal proceeding is commenced "by the filing of a notice to appear with the immigration court." Based on these regulations, Defendant argues that the *Pereira* decision requires this court to find that because the notice to appear filed in 2011 did not contain time-and-place information, it was defective and does not qualify as a

---

[13] Numerous courts have, on occasion, referred to the regulations as jurisdictional. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 698 (6th Cir. 2002) ("[A] deportation proceeding is commenced with a 'Notice to Appear,' a charging document or complaint-like pleading, which vests jurisdiction with the immigration court." (citations omitted)); *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 890 (9th Cir. 2018) ("Once a notice to appear is filed with the Immigration Court . . . jurisdiction over the individual's immigration case vests with the [immigration judge], and it is the [immigration judge's] duty to adjudicate the case."); *Haider v. Gonzales*, 438 F.3d 902, 909 (8th Cir. 2006) ("[J]urisdiction vests with the Immigration Court when the INS files a charging document with the Court."); *Shogunle v. Holder*, 336 F. App'x 322, 323 (4th Cir. 2009) (holding that, although the alien showed up to his removal hearing, the immigration court did not have jurisdiction because DHS had not filed the notice to appear with court); *Bailey v. Attorney Gen. of U.S.*, 297 F. App'x 168, 170 (3d Cir. 2008) ("[J]urisdiction vested when the Notice to Appear was filed with the Immigration Court.").

charging document, and therefore jurisdiction did not vest, rendering the underlying Order of deportation null and void. The court is not convinced.

Defendant reads the regulations to mean that the immigration court lacks "subject-matter jurisdiction" until it is created by the filing of a charging document. This rests on the erroneous assumption that immigration courts derive subject-matter jurisdiction from DHS regulations. But, to be clear, the source of the immigration court's power to exercise legal authority over removal proceedings lies in the statute, § 1229a, and not in the regulation, § 1003.14. The statute and regulations demonstrate that the primary function of filing the notice to appear as a charging document is to commence a deportation proceeding. As a charging document, the notice to appear thus serves to provide information necessary to commence a deportation proceeding. The regulations do not indicate that a notice to appear that lacks time-and-place information cannot function as a charging document. Even if time-and-place information may not necessarily be available at the time of filing, once the time-and-place information becomes available, it is provided by the immigration court to both the government and the alien. This process comports with the statute and the regulations under Fifth Circuit precedent.[14]

The Fifth Circuit has held that, under the statute, a notice to appear "need not include the specific time and date of a removal hearing." *Gomez-Palacios v. Holder*,

---

[14] This approach is also consistent with all court actions and administrative proceedings in that the actions and proceedings are commenced with the filing of a complaint or petition that contains information necessary to commence the proceeding, but is typically devoid of time-and-place information for future hearings.

560 F.3d 354, 359 (5th Cir. 2009) (citing *Mehdi v. Gonzales*, 216 F. App'x 412, 414 (5th Cir. 2007) (per curiam) and *Dababneh v. Gonzales,* 471 F.3d 806, 809 (7th Cir. 2006)). The key is "that [time-and-place] information *may* be provided in a subsequent [notice of hearing]." *Id.* (emphasis added). In *Mehdi,* the Fifth Circuit addressed Defendant's argument that an immigration court lacks subject-matter jurisdiction where the notice to appear used as a charging document did not specify the time-and-place of his removal proceeding. *Mehdi*, 216 F. App'x at 413–14. After noting that Mehdi had actual notice of the proceeding and was not prejudiced by the omission of the time and date, the court held that a two-step notice process—an initial notice to appear that is later followed by a notice of hearing supplying time-and-place information—satisfies the statutory requirement of written notice. *Id.* at 414. Accordingly, the court concluded that although Mehdi's notice to appear was deficient, it did not preclude the exercise of jurisdiction by the immigration court. *Id.* The court sees no reason why the Fifth Circuit decision in *Gomez-Palacio* is no longer applicable, including in view of the *Pereira* decision. Indeed, the Fifth Circuit has recently acknowledged that "[the *Pereira*] decision does not affect [the] holding in *Gomez-Palacios*." *Fuentes-Pena v. Barr*, No. 17-60637, 2019 WL 1053084, at *3 n.2 (5th Cir. Mar. 6, 2019).

The Board of Immigration Appeals ("BIA") also recently grappled with this issue in a post-*Pereira* context. In *Bermudez-Cota*, the BIA held that "a notice to appear that does not specify the time-and-place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings and meets

the requirements of section 239(a) of the Act, so long as a notice of hearing specifying this information is later sent to the alien." 27 I. & N. Dec. 441, 447 (BIA 2018). In doing so, the BIA relied in part on the Fifth Circuit's decision in *Gomez-Palacios*. *Id.* at 446–47 (stating it agreed with "the Fifth, Seventh, Eighth, and Ninth Circuits that a two-step notice process is sufficient to meet the statutory notice requirements").[15]

In sum, this court is not persuaded that the immigration court lacks jurisdiction where the charging document lacks time-and-place information. Nor does the *Pereira* decision require a different interpretation.

In this case, Defendant received a notice to appear that lacked time-and-place information. He signed the notice, admitted that he was in the United States illegally, and waived his right to a 10-day waiting period by requesting an expedited hearing. Defendant later attended his hearing, and the immigration court ordered that he be deported. Defendant waived appeal and was subsequently deported. In view of the foregoing, this court holds that although the initial notice to appear that was served on Defendant did not include the time-and-date information, the immigration court did not lack jurisdiction over the deportation proceeding.

### C. Collateral Attack under 8 U.S.C. § 1326

In the alternative, the court notes that Defendant depends on 8 U.S.C.

---

[15] *See also Hernandez-Perez v. Whitaker*, 911 F.3d 305, 313–15 (6th Cir. 2018) (affirming the BIA interpretation in *Matter of Bermudez-Cota* in light of *Pereira,* and "conclud[ing] that jurisdiction vests with the immigration court where . . . the mandatory information about the time of the hearing is provided in a Notice of Hearing issued after the [notice to appear]." (internal citations omitted)).

§ 1326(d) to collaterally attack the validity of his prior removal order. Defendant maintains that his removal was fundamentally unfair because the order of deportation was issued by an immigration court that lacked jurisdiction over his case. Defendant argues that, but for the immigration court's alleged error of acting without jurisdiction, he would not have been ordered removed. The court disagrees with Defendant's assumption that he has met the threshold to raise a collateral attack.

With limited exception, a defendant may not challenge the validity of a deportation order involving an illegal reentry. *Id.* Section 1326(d) provides that an alien may not challenge the validity of the prior deportation order unless he shows (1) that he has exhausted administrative remedies, (2) he was deprived judicial review, and (3) the order was a result of fundamental unfairness.[16] The Fifth Circuit has established that, to collaterally attack a prior deportation order in a criminal proceeding, a defendant must establish that "(1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Cordova-*

---

[16] 8 U.S.C. § 1326(d) provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

*Soto*, 804 F.3d 714, 718–19 (5th Cir. 2015) (quoting *United States v. Lopez–Ortiz,* 313 F.3d 225, 229 (5th Cir. 2002)). To establish actual prejudice, a defendant must show "a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *Id.* at 719 (quoting *United States v. Benitez–Villafuerte,* 186 F.3d 651, 658–59 (5th Cir. 1999)).

As to the first and second requirements, Defendant does not contend a failure to exhaust administrative remedies, or that he was deprived of proper judicial review. Rather, Defendant focuses on the third requirement, arguing that the deportation hearing was fundamentally unfair because he did not, at the time of the hearing, have the benefit of the *Pereira* decision. This argument is not persuasive. Defendant did not raise any jurisdictional arguments during his deportation hearing. As Defendant failed to "contest his removability to the immigration judge, he cannot argue now that the judge lacked jurisdiction to find him removable." *Ali v. Gonzales*, 200 F. App'x 294, 295–96 (5th Cir. 2006) (dismissing an alien's argument that the immigration court lacked jurisdiction because the notice to appear did not include the time-and-date information).

In any event, "[u]nlawful removal orders can . . . still serve as the predicate for § 1326 prosecutions so long as the defendant has an opportunity for administrative and judicial review of any errors." *United States v. Hernandez-Lopez*, 2018 WL 6313292, at *4 (W.D. Tex. Dec. 3, 2018) (citing *United States v. Earle*, 488 F.3d 537, 547 (1st Cir. 2007); *United States v. Paredes-Batista*, 140 F.3d 367, 376 (2d Cir. 1998); and *United States v. Alvarado-Delgado*, 98 F.3d 492, 493 (9th Cir. 1996) (en banc)).

The record in this case shows that Defendant had ample opportunity to contest the immigration court's jurisdiction and was otherwise afforded due process. It is undisputed that Defendant received both the notice to appear and time-and-place information for the removal hearing, that he appeared at the hearing, and that he was represented by counsel. The record does not show that Defendant would not have been deported but for the missing the time-and-place information in the notice to appear.

For the foregoing reasons, on the basis of the record in this case, the court denies Defendant's attempt to collaterally challenge his prior deportation order under 8 U.S.C. § 1326(d).

## D. *Carr* Factors

In the alternative, the court further notes that Defendant's challenge also depends on this court granting leave to withdraw his guilty plea under Fed. R. Crim. P. 11(d)(2)(B), which in turn requires evaluation of the so-called *Carr* factors. The Fifth Circuit has established seven factors that this court must consider in determining whether to permit the defendant to withdraw a guilty plea:

(1) whether or not the defendant has asserted his innocence;

(2) whether or not the government would suffer prejudice if the withdrawal motion were granted;

(3) whether or not the defendant has delayed in filing his withdrawal motion;

(4) whether or not the withdrawal would substantially inconvenience the court;

(5) whether or not close assistance of counsel was available;

(6) whether or not the original plea was knowing and voluntary; and

(7) whether or not the withdrawal would waste judicial resources; and, as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion.

*United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984). These factors are non-exhaustive and ultimately examined under the totality of the circumstances. *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014). Upon review, the court determines that none of the factors weigh in favor of the Defendant.

First, Defendant asserts actual innocence, but the facts in this case belie that argument. Nothing in the record suggests that Defendant had any viable defense to the deportation proceedings. And the court also notes that Defendant entered into a stipulation for removal, which constitutes "a conclusive determination of the alien's removability from the United States." 8 U.S.C. § 1229a(d). This factor weighs against Defendant.

Second, the court finds that the government would be prejudiced if the motion to withdraw is granted. Significant government resources have already been expended in preparing this case for sentencing, and additional resources would be expended to re-litigate the underlying removal. The government is already under the heavy burden of prosecuting a large number of cases in this district, and requiring it to restart cases involving facts such as here would be prejudicial to the government. This factor weighs against Defendant.

Third, for the same reasons stated above for the second factor, the court finds that substantial delay would result by granting the motion to withdraw. This factor

weighs against Defendant.

Fourth, the withdrawal of the guilty plea would result in substantial inconvenience to the court, particularly if a trial is necessary as judicial resources would need to be allocated to arrange for the trial. Fifth, Defendant concedes that he has been well-represented by counsel throughout his proceedings. Sixth, the facts and record demonstrate that the initial plea was entered knowingly and voluntarily. Seventh, allowing Defendant to withdraw his guilty plea would waste judicial resources as it would have made the plea colloquy inconsequential along with all the work undertaken in preparation for sentencing. Defendant has not offered valid justification for why he did not raise any jurisdictional argument until the day before sentencing. Nor has the court received information or credible argument that would reasonably lead it to believe that redoing this case would result in an outcome other than eventual deportation. All of the *Carr* factors, when considered under the totality of circumstances in this case, weigh against the Defendant. For this reason, Defendant's motion to withdraw his guilty plea is denied.

### III. CONCLUSION

Based on the foregoing reasons, this court concludes that the Supreme Court decision in *Pereira* does not provide a route to the relief Defendant seeks. Accordingly, Defendant's Motion to Withdraw the Guilty Plea, Motion for Leave, and Motion to Dismiss the Indictment are **DENIED**.

It is so **ORDERED**.

**SIGNED** March 21, 2019.

/s/ Jimmie V. Reyna
_____
Jimmie V. Reyna, Circuit Judge
U.S. Court of Appeals for the Federal
Circuit